**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

DESSIE MITCHESON, IRINA VORONINA, CIELO JEAN GIBSON, CLAUDIA SAMPEDRO, JESSICA BURCIAGA, JOANNA KRUPA, MARTA KRUPA, PAOLA CANAS, ROSA ACOSTA, KIMBERLY COZZENS, BROOKE TAYLOR-JOHNSON, LUCY PINDER, and MASHA LUND,

　　　　　　　　　　　Plaintiffs,

　　　　　　- against -

MPR ILLUSIONS, INC., d/b/a ILLUSIONS GENTLEMEN'S CLUB, BABYLON ENTERTAINMENT, LLC d/b/a ILLUSIONS GENTLEMEN'S CLUB, BERNARD SERINGER III, and SHAYA YAMPOLSKIY,

　　　　　　　　　　　Defendants.

Case No. _____

**COMPLAINT**

(Jury Trial Demanded)

　　　　Plaintiffs DESSIE MITCHESON, IRINA VORONINA CIELO JEAN GIBSON,

CLAUDIA SAMPEDRO, JESSICA BURCIAGA, JOANNA KRUPA, MARTA KRUPA,

PAOLA CANAS, ROSA ACOSTA, KIMBERLY COZZENS, BROOKE TAYLOR-JOHNSON,

LUCY PINDER and MASHA LUND (collectively, "Plaintiffs"), by and through their

undersigned counsel, as and for their Complaint ("Complaint") against defendants MPR

ILLUSIONS, INC., d/b/a ILLUSIONS GENTLEMEN'S CLUB, BABYLON

ENTERTAINMENT, LLC d/b/a ILLUSIONS GENTLEMEN'S CLUB, BERNARD

SERINGER III, and SHAYA YAMPOLSKIY, collectively "Defendants"), respectfully allege as

follows:

## BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' theft, alteration, and unauthorized publication of images of Plaintiffs, each of whom are world renowned professional models, to promote their strip club, Illusions Gentlemen's Club ("Illusions" or the "Club"), in Deer Park, New York.

2.      As detailed below, Defendants' theft and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of New York Civil Rights Law §§ 50-51, which protects a person's right to privacy and publicity; c) violation of New York's Deceptive Trade Practices Act (New York G.B.L. §349) which prohibits deceptive business practices; and, d) defamation.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, defendant MPR Illusions, Inc. ("MPR Illusions") is a corporation formed under the laws of the state of New York, with its principal

place of business located at 3A Saxwood Street, Deer Park, New York.

7.      According to publicly available records, defendant Babylon Entertainment LLC ("Babylon") is a corporation formed under the laws of the state of New York, with its principal place of business located at 3A Saxwood Street, Deer Park, New York.

8.      Upon information and belief, defendant Bernard Seringer III ("Seringer") is a resident of the State of New York, and at all relevant times was the owner, principal and/or chief executive officer of MPR Illusions.

9.      Upon information and belief, defendant Shaya Yampolskiy ("Yampolskiy") is a resident of the State of New York, and at all relevant times was the owner, principal and/or chief executive officer of Babylon.

10.      Venue is proper in the United States District Court for the Eastern District of New York because Suffolk County is Defendants' principal place of business.

11.      All parties have minimum contacts with Suffolk County, a significant portion of the alleged causes of action arose and accrued in Suffolk County, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Suffolk County.

## PARTIES

### Plaintiffs

12.      Plaintiff Dessie Mitcheson ("Mitcheson") is a well-known professional model, and a resident of Orange County, California.

13.      Plaintiff Irina Voronina ("Voronina") is a well-known professional model, and a resident of Los Angeles County, California.

14.      Plaintiff Cielo Jean Gibson ("Gibson") is a well-known professional model, and a

resident of Los Angeles County, California.

15.     Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

16.     Plaintiff Jessica Burciaga ("Burciaga") is a well-known professional model, and a resident of Los Angeles County, California.

17.     Plaintiff Joanna Krupa ("Joanna Krupa") is a well-known professional model, and a resident of Los Angeles County, California.

18.     Plaintiff Marta Krupa ("Marta Krupa") is a well-known professional model, and a resident of Northhampton County, Pennsylvania.

19.     Plaintiff Paola Canas ("Canas") is a well-known professional model, and a resident of Los Angeles County, California.

20.     Plaintiff Rosa Acosta ("Acosta") is a well-known professional model, and a resident of Los Angeles County, California.

21.     Plaintiff Kim Cozzens ("Cozzens") is a well-known professional model, and a resident of Santa Clara County, California.

22.     Plaintiff Brooke Taylor-Johnson ("Johnson") is a well-known professional model, and a resident of Santa Barbara County, California.

23.     Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of the United Kingdom.

24.     Plaintiff Masha Lund ("Lund") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendants*

25.     MPR Illusions is a corporation formed under the laws of the state of New York,

with its principal place of business located at 3A Saxwood Street, Deer Park, New York. Upon information and belief, during times relevant to Plaintiffs' claims in this action, MPR Illusions owned and operated Illusions.

26.    Babylon is a corporation formed under the laws of the state of New York, with its principal place of business located at 3A Saxwood Street, Deer Park, New York.  Upon information and belief, during times relevant to Plaintiffs' claims in this action, Babylon owned and operated Illusions.

27.    Upon information and belief, Seringer, in his capacity as owner, principal and/or chief executive officer of MPR Illusions maintained operational control over Illusions during the relevant time period, including all advertising relating thereto.

28.    Upon information and belief, Yampolskiy, in her capacity as owner, principal and/or chief executive officer of Babylon maintained operational control over Illusions during the relevant time period, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

29.    As set forth immediately below, each Plaintiff is an extremely well-known professional model who earns her livelihood modeling and selling her Images to companies, magazines and individuals for the purpose of advertising products and services.

30.    Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

31.    Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by

one or more of the Defendants to make it appear that they worked at or endorsed Illusions.

32.     In the case of each Plaintiff, such appearance was false.

33.     Moreover, in each case, this misappropriation occurred without any of the Plaintiffs' knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

34.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

35.     Mitcheson is a well-known model and actress, best known for winning *Maxim's* Hometown Hottie contest in 2013.  Mitcheson has served as the face of the MGM Grand, and the face of Playboy Intimates.  She has over 135,000 Instagram followers, and in May 2015 served as the main ring girl during the Floyd Mayweather/Manny Pacquiao fight in Las Vegas.

36.     That we know of, Mitcheson is depicted in the photos in Exhibit "A" to promote Illusions on its Instagram page. These Images were intentionally altered to make it appear that Mitcheson was either a stripper working at Illusions, or that she endorsed the Club.

37.     Mitcheson has never been employed at Illusions, has never been hired to endorse Illusions, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

38.     Voronina, who was named *Playboy's* Miss January 2001, has represented international brands including SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, Sisley &

Detour to name a few.  She has millions of visual impressions around the globe via the covers and pages of worldwide magazines, including: *FHM*, *Maxim*, *Playboy* (in 20 countries), *Max* (Italy), *Ocean*, *Shape*, *944*, *Knockout*, *Q* (UK), *People* (Australia), and most recently *Kandy*, *Rukus*, *Vape* and *Browz* magazines.  In 2008 Voronina was named the St. Pauli Girl spokesmodel, completed a 12-month public relations tour across United States, and became the first ever St. Pauli Girl to ring the NYSE closing bell, representing Constellation Brands.  In 2013 Voronina was named *Kandy Magazine's* Model of the Year as a result of her fans downloading the highest number of digital issues that year.  Voronina has more than 4.4 million followers on Facebook, Instagram, Twitter and YouTube. (Facebook: 3.6 million, Instagram: 700,000, Twitter: 105,000). [1]  As an actress, Voronina got her first big screen break in *Reno 911!: The movie*, and additional credits include *Svetlana*, *Saul of the Mole Men*, *iCarly*, *Balls of Fury*, and *Piranha 3DD*, to name a few.  Most recently, Voronina has been seen in supporting roles in *Laser Team* and *Killing Hasselhoff*, and is currently starring in the independent action film *Scramble*, which she also co-produced.

39.     That we know of, Voronina is depicted in the photos in Exhibit "B" to promote Illusions on its Instagram page. These Images were intentionally altered to make it appear that Voronina was either a stripper working at Illusions, or that she endorsed the Club.

40.     Voronina has never been employed at Illusions, has never been hired to endorse Illusions, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

41.     Gibson is an extremely successful model who got her start in the industry when

---

[1] In the modeling industry, the number of social media followers a model has is a strong indication of her popularity and, thus, earning potential.

she won the *Import Turner* magazine Model Search. Gibson has a massive motor sport following, and is currently the model for the Falken Drift Team and SBT, Inc. (Short Block Technologies), as well as being a Top Rank Boxing model. Gibson has been seen in the pages of *FHM*, *American Curves* (cover), *Supreme, MuscleMag International* and *Muscle & Fitness*, and has over 53,000 Instagram followers.

42.     That we know of, Gibson is depicted in the photos in Exhibit "C" to promote Illusions on its Instagram page. These Images were intentionally altered to make it appear that Gibson was either a stripper working at Illusions, or that she endorsed the Club.

43.     Gibson has never been employed at Illusions, has never been hired to endorse Illusions, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

44.     Sampedro is a Cuban born model, mother and spokeswoman, who has appeared in many catalogues and magazine editorials, and has a number of cover credits for magazines such as *Nine 5 Four*, *Shock*, *Face to Face* and *Mixed*.  Sampedro is a sponsored model for Nutri Sups Nutrition, and is also a spokesmodel and contracted model for Bare Ava.  Sampedro is also a Social Media Influencer, with close to a million Instagram followers and a further combined half million fans on Facebook and Twitter.

45.     That we know of, Sampedro is depicted in the photos in Exhibit "D" to promote Illusions on its Instagram page. These Images were intentionally altered to make it appear that Sampedro was either a stripper working at Illusions, or that she endorsed the Club.

46.     Sampedro has never been employed at Illusions, has never been hired to endorse Illusions, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

47.     Burciaga is a model and businesswomen, and the owner of Sailor and Saint Clothing line. Burciaga was the *Playboy* Playmate of the Month for February 2009, and has also modeled for *Stuff*, *Maxim*, *EA Sports*, *Import Turner*, *Modified Magazine*, and *Show Latina*, among many others.  Burciaga has 1.5 million followers on Instagram and 200,000 followers on Twitter.

48.     That we know of, Burciaga is depicted in the photos in Exhibit "E" to promote Illusions on its Instagram and Facebook pages. These Images were intentionally altered to make it appear that Burciaga was either a stripper working at Illusions, or that she endorsed the Club.

49.     Burciaga has never been employed at Illusions, has never been hired to endorse Illusions, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

50.     Joanna Krupa is a world-renowned model, actress, and television personality. As an actress, Joanna Krupa has appeared in the film *Max Havoc: Curse of the Dragon*, and the television show *Superstars*, and also appeared as a contestant on Season 9 of ABC's *Dancing with the Stars*. In addition, since 2010 Joanna Krupa has been head judge of *Poland's Next Top Model*, and is a cast member of Bravo's *The Real Housewives of Miami*. As a model, Joanna Krupa has twice appeared on the cover of *Playboy*. She has also appeared on numerous other magazine covers, including *Personal*, *Steppin' Out*, *Envy*, *Shape*, *FHM*, *Stuff*, *Inside Sport*, *Teeze*, and *Maxim*. Joanna Krupa has been named the "Sexiest Swimsuit Model in the World," and in 2011 Maxim ranked her #55 in its 2011 Hot 100. In 2004-2005, she was voted German's Maxim Model of the Year. Joanna Krupa also models for ads with PETA.  Joanna Krupa has over 1 million Instagram followers and 1 million Facebook followers.

51.     That we know of, Joanna Krupa is depicted in the photos in Exhibit "F" to

promote Illusions on its Instagram and Facebook pages. These Images were intentionally altered to make it appear that Joanna Krupa was either a stripper working at Illusions, or that she endorsed the Club.

52.    Joanna Krupa has never been employed at Illusions, has never been hired to endorse Illusions, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

53.    Marta Krupa has been a contestant on "Dancing with the Stars" in Poland, a host on *FHM South Africa Calendar*, and has appeared on the covers of magazines worldwide, including *FHM*, *La Direct*, *Naluda*, and *Bay Harbor*. Marta Krupa has likewise appeared on 13 episodes of *The Real Housewives of Miami*, recently finished shooting a feature film entitled *You Can't Have It*, and, as a singer, currently has a single entitled "Limbo."

54.    That we know of, Marta Krupa is depicted in the photos in Exhibit "G" to promote Illusions on its Instagram and Facebook pages. These Images were intentionally altered to make it appear that Marta Krupa was either a stripper working at Illusions, or that she endorsed the Club.

55.    Marta Krupa has never been employed at Illusions, has never been hired to endorse Illusions, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

56.    Canas is a Colombian-born model, actress, and television host, who over the past 12 years has appeared as a runway model at fashion shows throughout the world, and currently serves as the is the international face of Curve lingerie. Canas was recently chosen as the face of the Masters Gold Tournament in Dubai, and was the image for the "International Surf and Sport expo" in Orlando. She has worked for international brands and labels such as SOHO, KISS

underwear, Salon International, Zona Rosa, and Esteban Escobar. She has appeared in numerous

TV shows like FOX Sports and on both Telemundo and TV Azteca as herself.

57.    That we know of, Canas is depicted in the photos in Exhibit "H" to promote

Illusions on its Instagram page. These Images were intentionally altered to make it appear that

Canas was either a stripper working at Illusions, or that she endorsed the Club.

58.    Canas has never been employed at Illusions, has never been hired to endorse

Illusions, has received no remuneration for Defendants' unauthorized use of her Image, and has

suffered, and will continue to suffer, damages as a result of same.

59.    Acosta is a trained ballerina, graduate of the Dominican Republic's Institute of

Culture and Art, a former member of the Dominican Nacional Ballet, becoming its youngest

soloist in 2002, and was nominated twice by the Secretaria de Estado de la Juventud for her work

in the category of Cultural Development. Acosta began her modeling career in 2004,

participating in magazines and television for prestigious Dominican enterprises, and has since

distinguished herself in several areas of the modeling world, having been featured in numerous

magazines, commercials and music videos. She has 1.7 million Facebook followers, 930,000

Instagram followers, and 315,000 Twitter followers.

60.    That we know of, Acosta is depicted in the photos in Exhibit "I" to promote

Illusions on its Instagram and Facebook pages. These Images were intentionally altered to make

it appear that Acosta was either a stripper working at Illusions, or that she endorsed the Club.

61.    Acosta has never been employed at Illusions, has never been hired to endorse

Illusions, has received no remuneration for Defendants' unauthorized use of her Image, and has

suffered, and will continue to suffer, damages as a result of same.

62.    Cozzens is a model and actress who has appeared on commercials for Old Spice

and New Amsterdam Vodka, among others. Cozzens has modeled for campaigns with Guess, Old Spice, Grey Goose, Sephora Cosmetics, Con Air Hair Tools, Sketcher Shoes, Sandals Resort, Dodge and Pepsi, as has appeared in *Maxim*, among other magazines. In total, Cozzens has signed with 12 top agencies internationally, two of them being LA Models and LATALENT.

63. That we know of, Cozzens is depicted in the photos in Exhibit "J" to promote Illusions on its Facebook page. These Images were intentionally altered to make it appear that Cozzens was either a stripper working at Illusions, or that she endorsed the Club.

64. Cozzens has never been employed at Illusions, has never been hired to endorse Illusions, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

65. Pinder is an English model, actress, host, businesswoman, and one of Great Britian's most famous glamour models. Pinder has been featured in hundreds of magazines, including *FHM, Loaded, Nuts*, and the *Daily Star*, as well has appeared on numerous occasions on the *FHM* "100 Sexiest Women in the World" list. In addition, Pinder has an established and developing acting career with many TV appearances and Film credits, and has appeared on shows such as *I'm Famous and Frightened, Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon, Dream Team and Bo! in the USA.* Pinder was a contestant on *Celebrity Big Brother*, had starring roles in films such as *Strippers vs Werewolves, The Seventeenth Kind, Age of Kill and Warrior Savitri.* Pinder has over 1.4 million Facebook followers and 150,000 Instagram followers.

66. That we know of, Pinder is depicted in the photos in Exhibit "K" to promote Illusions on its Facebook page. These Images were intentionally altered to make it appear that Pinder was either a stripper working at Illusions, or that she endorsed the Club.

- 12 -

67.     Pinder has never been employed at Illusions, has never been hired to endorse Illusions, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

68.     Johnson is a world-renowned model who has appeared in magazines such as *FHM*, *Maxim*, *Viva Glam*, and *Stuff*. She has also appeared in commercials and billboards such as Fredrick's of Hollywood, Coors Light, and Budweiser. In addition, Johnson has also been featured in countless other catalogs, billboards, television commercials and shows.

69.     That we know of, Johnson is depicted in the photo in Exhibit "L" to promote Illusions on its Facebook page.  These Images were intentionally altered to make it appear that Johnson is either a stripper working at Illusions, or that she endorsed the Club.

70.     Johnson has never been employed at Illusions, has never been hired to endorse Illusions, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

71.     Lund is an internationally renowned Danish/Russian model, actress and designer, who has appeared in as for landed big ads for Rockstar Energy Drinks billboards that were in 20 cities all over the U.S., several covers in *FHM*, *Maxim*, and *People* Magazine, and was named one of the "Sexiest Women in the World" by *FHM*.  As she continued modeling and acting, she was featured in movies with Jack Black and Tenacious D in *The Pick of Destiny*, and *Epic Movie* with Carmen Electra.  Lund has been featured in music videos for Eminem, Lady Gaga, and many other big names. She also was a spokesmodel for several brands including, Dreamgirl Lingerie clothing company for eight years, and was featured on more billboards for 138 Water Company on Sunset Drive in Los Angeles.  In 2010, she starred in a popular Danish reality show about career women from Denmark "living the dream" in Los Angeles, called *Danske Hollywood*

*Fruer*.  Besides modeling and acting, she studied fashion, art and interior design. She is also working on her own pet clothing line.  Lund is also an interior decorator, blogger, and endorser for several beauty companies.

72.     That we know of, Lund is depicted in the photo in Exhibit "M" to promote Illusions on its Facebook page.  These Images were intentionally altered to make it appear that Lund is either a stripper working at Illusions, or that she endorsed the Club.

73.     Lund has never been employed at Illusions, has never been hired to endorse Illusions, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

### Defendants' Business

71.     Upon information and belief, both MPR Illusions and Babylon operated, during the relevant time period, Illusions, where they engaged in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

72.     Upon information and belief, and in furtherance of its promotion of Illusions, MPR Illusions and Babylon owned, operated and controlled Illusions' social media accounts, including the Illusions Facebook, Twitter, and Instagram accounts during the relevant time period.

73.     MPR Illusions and Babylon used the Illusions Facebook, Twitter, and Instagram accounts to promote Illusions, and to attract patrons thereto.

74.     MPR Illusions and Babylon did this for its own commercial and financial benefit.

75.     MPR Illusions and Babylon used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked as a stripper at Illusions or endorsed Illusions.

76.     MPR Illusions and Babylon used Plaintiffs' Images and created the false impression that they worked at or endorsed Illusions to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

77.     As MPR Illusions and Babylon were at all times aware, at no point has any Plaintiff ever been affiliated with or employed by Illusions and at no point have any of the Plaintiffs ever endorsed Illusions.

78.     All of MPR Illusions and Babylon activities, including their theft of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Exotic Island did not compensate Plaintiffs for its use of their Images.

79.     As such, Plaintiffs have never received any benefit for MPR Illusions and Babylon's use of their Images.

***Standard Business Practices in the Modeling Industry***

80.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

81.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are

- 15 -

for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendants' Theft of Plaintiffs' Images***

82.    As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes to promote Illusions by and through various marketing and promotional mediums including, without limitation, the Illusions website, Twitter, Facebook, and Instagram.

83.    Defendants showcased Plaintiffs' Images on Illusions social media pages to create the false impression that Plaintiffs worked at Illusions or endorsed same.

84.    Defendants did so to attract clientele to Illusions, promote Illusions, and thereby generate revenue for Defendants.

85.    Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Illusions.

86.    Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

87.    This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are strippers.

88.    At no point were any of the Plaintiffs ever affiliated with Illusions, or Defendants.

89.    Each of Plaintiffs' Images was used without her consent.

90.    At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

91.    No Defendant ever obtained, either directly or indirectly, permission to use any of

Plaintiffs' Images.

92.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional

materials, including the Illusions website, Twitter, Facebook, or Instagram accounts.

93.     Defendants used Plaintiffs' Images without their consent, and without providing

remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her

Images.

94.     Upon information and belief, Defendants have taken the foregoing actions with

the intent of causing irreparable harm to each of the Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq*.:**
**False Advertising)**

95.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the

preceding paragraphs as if fully set forth herein.

96.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to

Defendants, and protect Plaintiffs from the conduct described herein.

97.     As set forth herein, each advertisement at issue in this action were false and

misleading because no Plaintiff ever worked at Illusions, or agreed to appear in Illusions'

advertisements.

98.     Given the false and misleading nature of the advertisements, they had the capacity

to deceive consumers and, upon information and belief, did so deceive consumers.

99.     Upon information and belief, said deceptive advertisements had a material effect

on the purchasing decisions of consumers who attended Illusions.

100.    Insofar as Defendants' published these false and misleading advertisements on the

internet, they had the capacity to affect interstate commerce, and, upon information and belief,

- 17 -

did so affect interstate commerce.

101.    Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

102.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

103.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

104.    Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq.*: False Endorsement)

105.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

106.    The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described herein.

107.    Defendants used Plaintiffs Images in order, *inter alia*, to create the false impression with the public that Plaintiffs either worked at Illusions or endorsed same.

108.    This was done to promote and attract clientele to Illusions, and thereby generate revenue for the Defendants.

109.    Thus, this was done in furtherance of Defendants' commercial benefit.

110.    Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

111.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

112.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

113.    Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### THIRD CAUSE OF ACTION
### (Violation of N.Y. Civ. Rights Law §§ 50-51)

114.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

115.    As set forth herein, Defendants have violated N.Y. Civil Rights Law §§ 50-51 by invading Plaintiffs' privacy, misappropriating their likeness, and publishing on the Club's website or related social media accounts altered Images of Plaintiffs which made it appear as though Plaintiffs were employed at the Club, or endorsed the Club.

116.    At all relevant times, the Club's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

117.    The Club's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

118.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract

clientele and generate business for the Club.

119.    At no point did any Defendant ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' Image on their website or social media account.

120.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

121.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

122.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

123.    Due to Defendants' violation of Plaintiffs' rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to exemplary and punitive damages.

124.    In addition, and pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby requests an Order permanently enjoining Defendants from violating Plaintiffs' right to privacy and publicity.

125.    In addition, and likewise pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby request an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of their statutory rights to privacy and publicity.

**FOURTH CAUSE OF ACTION**
**(Violation of N.Y. General Business Law § 349:**
**N.Y. Deceptive Trade Practices Act)**

126.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

127.    Defendants operated the Club's website and social media accounts in order to promote the Club, to attract clientele thereto, and to thereby generate revenue for Defendants. As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, was consumer-oriented in nature.

128.    Defendants published Plaintiffs' Images on the Club's website and social media accounts in order to create the false impression that Plaintiffs were either strippers working at the Club or endorsed the Club.

129.    As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Club.

130.    As Defendants were at all times aware, Plaintiffs never worked at the Club, never endorsed the Club, and never had any affiliation with the Club.

131.    Defendants' publication of Plaintiffs' Images was done without any Plaintiffs' consent and was misleading in a material respect because it created the impression that Plaintiffs were strippers working at the Club, or endorsed the Club.

132.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on their Club's website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

133.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## FIFTH CAUSE OF ACTION
### (Defamation)

134.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

135.    As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

136.    Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by the Club, that they endorsed the Club, or that they had some affiliation with the Club.

137.    None of these representations were true.

138.    In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at the Club, or endorsed the Club.

139.    Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

140.    In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

141.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

142.    Defendants' publication of Plaintiffs' Images constitutes defamation under New York law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred,

shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

143.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

144.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

145.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

146.    Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

<u>**DEMAND FOR JURY TRIAL**</u>

147.    Plaintiffs demand trial by jury.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through fifth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c) For punitive damages, in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       October 17, 2018

**THE CASAS LAW FIRM, P.C.**

By: /s/ John V. Golaszewski
    John V. Golaszewski, Esq.
    1745 Broadway, 17th Floor
    New York, New York
    T: 855.267.4457
    F: 855.220.9626

*Attorneys for Plaintiffs*